U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 1:25-cr-30-ACR |
| v. | NCD: Sept. 17, 2025; 2:00 p.m. |
| TORRIAN MARSHALL,<br>Defendant. | Judge: Hon. Ana C. Reyes |

## DEFENDANT'S MOTION TO DISMISS BOTH COUNTS OF THE INDICTMENT

The defendant, Torrian Marshall, through undersigned attorney, pursuant to the Fifth and Sixth Amendments to the U.S. Constitution and Federal Rules of Criminal Procedure 7 and 12(b)(3), respectfully moves to dismiss Counts One and Two of the Indictment, each of which charges him with Unlawful Possession of a Firearm and Ammunition under 18 U.S.C. § 922(g)(1). The Indictment is ECF 1.

Each count charges Mr. Marshall with the possession of firearms and ammunition that were never observed in Mr. Marshall's actual possession, such that the government must therefore establish constructive possession. For each count, the firearms were recovered on a shared, outside stairwell of a four-unit apartment building.[1] As to Count One, there is no direct evidence that Mr. Marshall ever accessed the stairwell, only that on August 12, 2022, he was inside the apartment building and exited the front door of the building and the firearms and

---

[1] For Count One, the charged ammunition was all recovered from the back stairwell. For Count Two, some of the charged ammunition was recovered from Apartment 4, where Mr. Marshall was arrested. Mr. Marshall is not the leaseholder of that apartment. The evidence is that he is one of many people who sometimes stay at and use the apartment. Multiple persons were inside Apartment 4 at the time the police arrested Mr. Marshall. To the extent that the analysis of the Count Two ammunition is different because of the difference between the back, outside stairwell and the apartment, Mr. Marshall moves for the alternative relief that possession of the firearms is stricken from Count Two of the indictment and excluded from evidence, such that the government could only proceed on Count Two as to ammunition recovered inside the apartment.

1

ammunition were later recovered on the rear stairwell. As to Count Two, the evidence shows only that on April 12, 2023, law enforcement arrested Mr. Marshall inside Apartment 4 and maintained him in their custody, that the stairwell was observed void of the firearms shortly after he was taken into custody, that several hours later the firearms were observed at the bottom of the back stairwell, and that ammunition was recovered from inside the apartment.[2]

Mr. Marshall was not charged with the firearms or ammunition at the time of their recovery, on either August 12, 2022 or April 12, 2023. So why are we here? Magazines connected with some of the firearms are linked to Mr. Marshall by DNA evidence that – taken in the light most favorable to the government – only establishes that Mr. Marshall's DNA had contact with the magazines at some point in time in some manner. DNA evidence cannot establish that Mr. Marshall possessed any of the firearms on August 12, 2022 (Count One), April 12, 2023 (Count Two), or at any time. There is no DNA evidence linking Mr. Marshall to the any of the ammunition.

For the reasons stated below, evidence that firearms and ammunition are found in a shared, outside space and in a shared apartment, with Mr. Marshall's being included as a potential contributor of DNA on the firearms, is insufficient to show the requisite knowing dominion and control over the weapons required for constructive possession. Accordingly, the defense respectfully moves to dismiss Counts One and Two of the Indictment. If the Court is disinclined to strike Count Two of the Indictment because of the ammunition found inside the apartment where Mr. Marshall was arrested, at minimum, the Court should strike the firearms

---

[2] The defense provided the government with the specific Body Worn Camera and time stamps that show where the firearms were recovered on the stairwell and that show that the firearms were not there on the stairwell at the time Mr. Marshall was in custody.

from Count Two of the Indictment and exclude any evidence of said firearms from any trial of Count Two.

## STATEMENT OF FACTS[3]

On two separate dates, the government recovered firearms from the back stairwell outside of a four-unit building at 574 Newcomb Street, SE, with which Mr. Marshall has some association. The stairwell is accessible to all four units of the building. Mr. Marshall was not seen in possession of any of the firearms. He was never observed on the stairwell or in the back of the building. Nor, for either event, was he the only person *inside* the building shortly before the time of the recovery of the firearms. Subsequent DNA testing from magazines of the firearms revealed that some but not all the recovered firearms yielded results supporting the inclusion of evidence that Mr. Marshall is a possible contributor on DNA obtained. DNA evidence also supported the inclusion of unknown persons. There is no DNA linking Mr. Marshall to any of the ammunition.

**A. Count One - August 12, 2022**

Count One charges, in relevant part, "On or about August 12, 2022 … TORRIAN MARSHALL … did unlawfully and knowingly receive and possess firearms, that is a Diamondback multi-caliber rifle, a Smith & Wesson 9 mm pistol, and a Glock 9 mm pistol, and did unlawfully and knowingly receive and possess ammunition, that is .223 caliber ammunition, 9 mm ammunition, and .45 caliber ammunition…."

On August 12, 2022, P.G. County police received a call about an unarmed physical assault in which the complainant alleged that an associate of one of the persons who committed the assault claimed to have a firearm. In relation to that call, an officer on a P.G. Police

---

[3] Mr. Marshall presents this recitation of facts for purposes of the motion to dismiss only and does not accept or adopt the facts for purposes of any future motions hearing or trial.

Department helicopter (aka "Guardian") observed an armed person enter a black GMC Acadia in Capitol Heights, Maryland. PG police tried to stop the Acadia but it fled. The helicopter followed a black GMC Acadia from Capitol Heights into Washington, D.C. From the helicopter, P.G. County officers observed a man with a rifle exit the Acadia and enter the four-unit apartment building at 574 Newcomb Street, SE, Washington D.C. *Mr. Marshall is not identified as that man who was observed entering or exiting the Acadia*.

The P.G. helicopter officers called for assistance from the D.C. Metropolitan Police Department. MPD officers eventually established a perimeter around 574 Newcomb Street. Mr. Marshall exited the front door of the building and officers spoke with him. The officers found no reason to detain Mr. Marshall and allowed him to depart without incident. At least one other man exited 574 Newcomb Street as well. This man too was questioned and allowed to depart.

Officers entered 574 Newcomb Street. They observed no persons in the building. Officers searched the building. During the search, they found three firearms, including a rifle, and a separate magazine laid out flat on the shared, outside rear stairwell connecting the apartment building to the backyard. Ammunition was recovered from magazines associated with the firearms and the separate magazine. No one was charged with any of the firearms or ammunition.

The DNA results were, succinctly, as follows:

- Diamondback multi-caliber rifle – two swabs, one with very strong support for inclusion, the other with DNA profiles of at least three individuals;

- Smith & Wesson 9 mm pistol – two swabs, one with strong support for inclusion, and the other with DNA profiles of at least four individuals; and

4

- Glock 9 mm pistol – two swabs, one with very strong support for inclusion, and the other with a mixture of five or more individuals.

None of the ammunition recovered on August 12, 2022 was tested for DNA. The DNA results from the firearms was not compared to any person other than Mr. Marshall.

**B. April 12, 2023**

Count Two charges, in relevant part, "On or about April 12, 2023 … TORRIAN MARSHALL … did unlawfully and knowingly receive and possess firearms, that is a Glock 30 .35 caliber handgun, a Walther Creed 9 mm handgun, and a Sig Sauer P320 .40 caliber handgun, and did unlawfully and knowingly receive and possess ammunition, that is 10 mm ammunition, 9 mm ammunition, .22 caliber ammunition, .40 caliber ammunition, and .45 caliber ammunition…."

Count Two stems from a search conducted on April 12, 2023. On that date, police went to the same building to serve a Maryland arrest warrant on Mr. Marshall in Apartment 4 prior to 7:00 a.m. Officers went to Apartment 4. Mr. Marshall opened the door. He identified himself. He was handcuffed and placed under arrest. Mr. Marshall remained cuffed and arrested while on scene. He was brought to processing. He remained jailed. He did not return to 574 Newcomb Street.

At the time that Mr. Marshall was arrested, there were other persons inside 574 Newcomb Street. There were four other adults – three men and one woman – and a child. They all remained on the scene for a lengthy period, after Mr. Marshall had been handcuffed and removed from the scene.

Close in time to Mr. Marshall's arrest, the police conducted a purported protective sweep of Apartment 4 and of 574 Newcomb Street. At 6:52 a.m., MPD Officer Michael King conducted a purported protective sweep of the back rear staircase. Officer King's Body Worn Camera was activated. He looked at the staircase. He observed no firearms. Officer King's Body Worn Camera did not show any firearms anywhere in the stairwell.

MPD obtained a search warrant. They searched the apartment and the stairwell. During the search of the stairwell, at 11:46 a.m., MPD Officer Christopher Hyder observed a large cardboard box containing three handguns in open and obvious view. The observation and recovery of the box and firearms were documented on Officer Hyder's Body Worn Camera. The box of firearms was observed and recovered in a place on the stairwell that Officer King's Body Worn Camera had shown was void of any box and of any firearms. The box of firearms had to have been placed there by someone other than Mr. Marshall.

The three firearms recovered from the back stairwell on April 12, 2023 were a Glock 30 .45 caliber handgun, a Walther Creed 9 mm handgun, and a Sig Sauer P320 .40 caliber handgun. Despite the firearms' appearance on the stairwell at a time while Mr. Marshall was in police custody, they are charged to Mr. Marshall in Count Two of the indictment.

From inside the apartment, the police recovered the following ammunition, each of which is also charged in Count Two:

- 10 mm ammunition – 2 rounds recovered in a Jordan shoebox in a bedroom of the apartment. A woman named D.W. was inside the apartment and asked the police to obtain her money from the shoebox. They police went to get the money for her and observed the ammunition.

- 9 mm ammunition – 27 rounds of 9 mm ammunition were found in an extended magazine in the living room under the couch. Multiple persons were sitting on the couch at the time of the police entry (and 13 rounds were found in the magazine of the Walther Creed).

- .22 caliber ammunition – two boxes containing 20 rounds of .22 caliber ammunition was found in the living room under a desk.

- .40 caliber ammunition – 5 rounds of .40 caliber ammunition was found in a gun box in the living room closet, 2 loose rounds of .40 caliber ammunition were found in a kitchen cabinet (and 13 rounds were found in the magazine of the Sig Sauer).

- .45 caliber ammunition – a bag containing 28 rounds of .45 caliber ammunition and a magazine containing 4 rounds of .45 caliber ammunition was found in the living room closet (and 13 rounds were found in the magazine of the Glock 30).

No one was charged with any of the firearms or ammunition.

The DNA results were, succinctly, as follows:

- Glock 30 .45 caliber handgun – two swabs, one with DNA profiles of at least two individuals and one with DNA profiles of at least one individual and reportedly "very strong support for inclusion" of Mr. Marshall;

- Walther Creed 9 mm handgun – two swabs, one in which Mr. Marshall is eliminated as the contributor (with at least two contributors), and one with at least four contributors and "limited support for exclusion"; and

- Sig Sauer P320 .40 caliber handgun – two swabs, one with at least three contributors and "limited support for exclusion" and one where the "DNA results are equally likely if Marshall is a contributor than if an unknown, unrelated person is a contributor."

None of the ammunition recovered on April 12, 2023 was tested for DNA. The DNA results from the firearms were not compared to any person other than Mr. Marshall.

## ARGUMENT

The government fails to provide sufficient evidence to show Mr. Marshall possessed the firearms and ammunition recovered from 574 Newcomb Street on August 12, 2022 and April 12, 2023. For both Counts One and Two, the police recovered three firearms from the same location – the outdoor staircase accessible to all the units of a shared apartment building – a location that police officers never saw Mr. Marshall occupy. All ammunition charged in Count One is associated with the Count One firearms and thus was also recovered in the back, open stairwell. Mr. Marshall was not observed in possession of any of the firearms on either of the days, indeed on any days. Given the absence of evidence, the police did not charge Mr. Marshall with any weapons offenses on August 12, 2022.

After Mr. Marshall was arrested on an unrelated Maryland charge on April 12, 2023, pursuant to a search warrant hours later, the police recovered a box with three firearms from the rear stairwell. Mr. Marshall could not have left the box and firearms there because it was not there when an officer's Body Worn Camera documented the area during the purported protective sweep at the time of Mr. Marshall's arrest and after he had already been detained. Later, the police also recovered ammunition from the apartment in which he – and four other adults – were present at the time of his arrest. None of that ammunition was recovered from Mr. Marshall's person or from any nearer to him than it was to the other adults. Given the absence

8

of evidence, law enforcement did not charge Mr. Marshall at the time of his arrest with any of the firearms (that had been placed on the stairwell after he was detained and removed from the scene) or ammunition.

The government's evidence does not establish that Mr. Marshall exercised voluntary dominion and control of either the firearms on August 12, 2022 or April 12, 2023. The Court therefore should dismiss both counts.

Mr. Marshall's proximity to the firearms (and ammunition) in the back stairwell is insufficient to establish possession. No reasonable juror could conclude that Mr. Marshall possessed the firearms and ammunition that were recovered from the back stairwell of 574 Newcomb Street on August 12, 2022 and the firearms and ammunition that were recovered from that same back stairwell on April 12, 2023 (at a time that the items had to have been placed there after Mr. Marshall was already arrested and taken away). For the purposes of a § 922(g) conviction, the government must show that a defendant was not just near a weapon but that some action or conduct would have brought the weapon under the person's voluntary dominion and control. *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008); *United States v. Jenkins*, 981 F.2d 1281, 1283-84 (D.C. Cir. 1992). The accused must have "a substantial voice" vis-à-vis the contraband." *Jenkins*, 981 F.2d at 11284 (cleaned up). The government offers no evidence that could convince a reasonable juror that Mr. Marshall himself had such control over weapons recovered so near to so many different people.

Further, any inference of possession is weakened in shared occupancy spaces and near non-existent as to the outside stairwell. *See United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005). There is a great difference between a shared outside stairwell accessible to all in an apartment building and an accused's own bedroom or own apartment. "A person who occupies

9

an apartment has dominion and control over its contents [] even when that person shares the premises with others, although it is plainly not as strong an inference in that circumstance." *Id.* at 722 (cleaned up). In *Dykes*, the evidence was found in the bedroom used by the defendant and therefore permitted an inference of possession. Here, there is no such inference to make as to any evidence found on an outdoor stairwell. As for the ammunition recovered in the apartment on April 12, 2023, the apartment is not Mr. Marshall's; he is just one of many people who uses it and one of many who were there inside it that very day. No material inference can be drawn.

"When evaluating whether [an accused] had "dominion and control" over the firearms, the essential question is whether there is some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in them, some power over them. In other words, the Government's case must rest on something more than the defendant's mere presence at the scene of a criminal transaction." *Bryant*, 523 F.3d at 355 (cleaned up). Looking at all of the prosecution's evidence fails to reveal that.Mr. Marshall had a stake in the firearms or ammunition from either Count One or Count Two. For Count One, he was simply present in the building; for Count Two, he was simply present in an apartment, when most of the items were located outside the apartment in common space for all.

Put most simply, the police correctly did not even charge Mr. Marshall for any of the firearms or ammunition that were recovered on August 12, 2022 or April 12, 2023 and that are charged in Counts One and Two. And the government gets credit for recognizing that its prosecution rests upon DNA evidence. The government, however, overestimates the strength of the DNA inclusion evidence as sufficient to proceed.

The government candidly advised the Court that its trial prosecution is dependent on jurors' inferring dominion and control based on DNA tests that identified Mr. Marshall as a

potential contributor to the firearms found in the stairwell on August 12, 2022 and on April 12, 2023 (even though the firearms were not there when Mr. Marshall was arrested and led out of the building). Yet, the DNA evidence does not meaningfully change the juror's calculus because it only reinforces the facts both parties already agree upon, that Mr. Marshall was at one point in 574 Newcomb Street, which placed him in the vicinity of weapons. DNA evidence cannot tell jurors anything about who has dominion or control over those weapons.

To start, latent DNA results can transfer directly from a person or by transfer from a third party. Even assuming the government's strongest possible assertion that Mr. Marshall touched the firearms in question at some point in the past, evidence of a touch alone does not demonstrate the requisite dominion and control over a weapon to establish constructive possession. *See United States v. Smith*, 997 F.3d 215, 224 (5th Cir. 2021) ("Indeed, every other circuit to address the subject has reached the same conclusion: it is error to convict on mere touching alone.") (citing cases from First, Sixth, Seventh, and Ninth Circuits and finding "clear and obvious error" in district court's treating defendant's "admission to touching [firearm] as a sufficient factual basis for his guilty plea as to that charge"). *See also Travillion v. Superintendent Rockville SCI*, 982 F.3d 896 (3d Cir. 2020) ("Applying the Supreme Court's *Jackson* standard, in viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences from the evidence, no rational trier of fact could have found Travillion was the perpetrator of the crime for which he was convicted *beyond a reasonable doubt* based upon fingerprint evidence on moveable object); *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (vacating firearms conviction due to insufficient evidence for firearm discovered in wastebasket next to defendant with his fingerprint on the weapon because evidence that defendant "had at some point touched one of the guns … is not sufficient."). The DNA evidence simply shows that Mr. Marshall's

DNA was transferred at one time to the swabbing. It says nothing about whether Mr. Marshall himself touched the firearms or the timing of when the DNA was transferred. It stands as no barrier to dismissal of the charges.

WHEREFORE, for the foregoing reasons, Mr. Marshall respectfully requests that this Court dismiss both charges contained in the Indictment.

Respectfully Submitted,

Date: September 2, 2025

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky, # 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC: 202-546-1500
VA: 571-207-9710
Cell: 202-409-2084
Fax: 571-777-9933
ed@ungvarskylaw.com
Counsel for Torrian Marshall

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, this 2nd day of September, 2025, I caused a copy of the foregoing motion to be served on counsel of record via the District Court's Electronic Case Filing system.

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky